IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MELISSA SHANELL COPELAND,

Plaintiff,

vs.

CHIME FINANCIAL, INC.,

Defendant.

Case No.: 2:25-cv-01625

JURY TRIAL DEMANDED

## COMPLAINT

Melissa Shanell Copeland ("Plaintiff") brings this action on an individual basis, against Chime Financial, Inc. ("Chime") for its violations of the Electronic Funds Transfer Act ("EFTA") 15 U.S.C. § 1693, *et. seq.*, and states as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for its willful and/or negligent violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*, ("EFTA") as described herein.

## PARTIES

2. Plaintiff resides in Milwaukee, Wisconsin, and is a "consumer" as that term is defined in 15 U.S.C. § 1693a(6).

3. Defendant is a financial institution that maintains its principal place of business at 101 California Street, Suite 500, San Francisco, California 94111. Defendant Chime can be served through its registered agent VCORP Agent Services, Inc., located at 301 S Bedford St, Ste 1, Madison, WI 53703.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

6. At all relevant times, Plaintiff had an asset account with Defendant ("Account").

7. At all relevant times, Plaintiff's Chime Account was established for personal, family, and/or household purposes.

8. At all relevant times, the Account constituted an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1).

9. In or around April 2025, Plaintiff disputed fraudulent transactions on her Account, and Defendant refunded the full amount, concluding that they were a result of fraud.

10. On or around April 18, 2025, Plaintiff received a replacement card for her checking account with Defendant due to the fraudulent transactions.

11. On or about April 21, 2025, Plaintiff received a call from a person purporting to be Defendant's representative named Timothy Bagshaw (the "Fraudster").

12. After calling from a different number, the Fraudster began calling from what Defendant's number.

13. During their conversation, the Fraudster stated the correct amount in Plaintiff's Account and seemed to know everything about it.

14. While Plaintiff was on the phone with the fraudster, she received a text message from an unknown phone number, saying that "Timothy Bagshaw requests $4,877." Plaintiff responded "Stop" and hung up from the call. There was a link in the text message, but the consumer

did not click on it.

15. Immediately after ending the call with the Fraudster, Plaintiff immediately called Defendant and spoke with a Defendant's representative.

16. During the call with Defendant's representative, Plaintiff was reviewing her account and noticed an electronic funds transfer of $4,877.00 transferred to Timothy B. on April 21, 2025 (the "Unauthorized Transaction").

17. Plaintiff did not authorize or initiate the Unauthorized Transaction.

18. On or about that date, Plaintiff did not initiate any transaction to Timothy B.

19. Plaintiff did not provide authorize or consent to Timothy B., Defendant, or any third party to electronically transfer funds from Plaintiff's Chime Account to Timothy B.

**Plaintiff Disputes the Unauthorized Fund Transfer with Defendant**

20. On the same day or April 21, 2025, Plaintiff disputed the Unauthorized Transaction, sufficiently identifying herself and sufficiently explaining that she received a call from a purported Chime representative, and got an e-mail confirmation from Defendant with Claim ID:16692728.

21. On April 26, 2025, Plaintiff received an email reply from Defendant to the dispute she submitted on April 21, 2025, stating that no error occurred.

22. Between April 26, 2025 and June 21, 2025, Plaintiff made several disputes and requests to reopen the investigation in relation to the Unauthorized Transaction.

23. Plaintiff also filed a complaint with the Wisconsin Department of Agriculture, Trade, and Consumer Protection regarding the Unauthorized Transaction.

24. On May 12, 2025, Plaintiff filed a police report with the Milwaukee Police Department regarding the Unauthorized Transaction.

25. On the following dates, Plaintiff received identical e-mail replies from Defendant

to the disputes she submitted between April 26, 2025 and June 21, 2025:

    (a)    On May 2, 2025, to the dispute she submitted on April 26, 2025;

    (b)    On May 8, 2025, to the dispute she submitted on May 3, 2025;

    (c)    On May 14, 2025, to the dispute she submitted on May 9, 2025;

    (d)    On May 17, 2025, to the dispute she submitted on May 14, 2025;

    (e)    On May 21, 2025, to the dispute she submitted on May 17, 2025;

    (f)    On May 23, 2025, to the dispute she submitted on May 21, 2025;

    (g)    On May 24, 2025, to the dispute she submitted on May 23, 2025;

    (h)    On May 27, 2025, to the dispute she submitted on May 26, 2025;

    (i)    On May 30, 2025, to the dispute she submitted on May 28, 2025;

    (j)    On June 5, 2025, to the dispute she submitted on June 4, 2025;

    (k)    On June 7, 2025, to the dispute she submitted on June 6, 2025;

    (l)    On June 17, 2025, to the dispute she submitted on June 13, 2025;

    (m)    On June 25, 2025, to the dispute she submitted on June 20, 2025;

26.    On July 3, 2025, Plaintiff mailed a dispute letter to Defendant but got lost in transit.

27.    On July 22, 2025, Plaintiff received a notification of an attempted transaction in the amount of $50 at Footlocker that was declined.

28.    On July 22, 2025, Plaintiff mailed another dispute letter to Defendant which sufficiently identified Plaintiff and provided sufficient explanation to determine the Unauthorized Transaction was fraudulent.

29.    On or about July 28, 2025, Plaintiff's dispute letter was delivered to Defendant.

30.    On or about July 31, 2025, Plaintiff received a reply from Defendant, via e-mail, stating that no error occurred and the claim is considered closed.

31. To date, Defendant has failed to credit Plaintiff the unauthorized electronic transfer of funds of $4,877.00.

32. To date, Defendant has not conducted a sufficient investigation relative to the unauthorized electronic funds transfer complained of by Plaintiff.

33. Defendant failed to conduct any reasonable or good faith investigation into the Unauthorized Transaction.

34. Despite Chime's representative admitting to Plaintiff during a phone call that the transaction was fraudulent, Chime's unreasonable investigations resulted in the opposite conclusions with no reasonable basis.

35. Defendant knows that a similar, if not identical scam Plaintiff described and evidenced in her disputes has happened to numerous consumers with Chime accounts.[1]

36. After Plaintiff received dispute responses, Plaintiff called Defendant and requested the documentation supporting Defendant's decision.

37. But for Defendant's unreasonable and bad faith investigation, Plaintiff would not have suffered the above damages.

38. Despite Defendant knowing that scammers spoof its number and represent themselves as Chime representatives, Defendant has not implemented any safeguards to ensure that consumers' hard-earned money is safe in Chime accounts.

39. Worse, even though Defendant knows that its consumers are susceptible to spoof scams, as described in Plaintiff's disputes, Defendant denied Plaintiff's disputes without conducting any reasonable investigation.

40. Defendant was unreasonable in concluding that Plaintiff made the Unauthorized

---

[1] https://www.wrtv.com/news/wrtv-investigates/pendleton-woman-warns-of-scam-targeting-chime-banking-app-members (Last accessed September 30, 2025).

Transaction with the information then available to it.

41. Defendant knowingly and willfully conducted a haphazard investigation, if any, wherein it concluded that no error occurred, even though it knew that such a spoof scam was harassing its customers.

42. Even more puzzling, Plaintiff did not authorize the transaction when prompted over text. It is unclear why Defendant concluded that no error occurred.

43. Presently, Plaintiff remains without the $4,877.00 electronically transferred to Timothy B. from Plaintiff's Chime Account.

44. Defendant has imposed liability on Plaintiff for the entirety of the disputed transaction of $4,877.00.

45. Plaintiff is neither legally responsible nor obligated to pay the $4,877.00 electronically transferred from Plaintiff's Chime Account.

46. At all relevant times, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

47. At all relevant times, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

48. As a direct and proximate result of the foregoing, Plaintiff suffered out of pocket damages of at least $4,877.00 from her depository account, a sum of money that, for Plaintiff and her family, is material and effectively amounted to all the money Plaintiff had.

49. As a result of losing effectively all her money and Chime's refusal and failure to perform a reasonable investigation, Plaintiff suffered serious economic and emotional distress.

Plaintiff lost her housing, was evicted, and was forced to forfeit her security deposit. Plaintiff was forced to give up her dog since she could no longer care for it. Her car note is in arrears and Plaintiff is now behind on bills, causing her credit score to drop around 200 points. Plaintiff took up a third shift at her job, now working between 12 and 16 hours a day, to survive and recover from Defendant's denials.

50. These consequences have caused financial hardship and emotional distress for Plaintiff.

51. Plaintiff purchased credit monitoring for all three bureaus to track her reports. Plaintiff was distressed as she had no confidence in Chime to reasonably investigate and reimburse her for any future unauthorized transactions.

52. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her depository funds; out of pocket losses; the expenditure of time and money disputing and trying to alert the Defendant to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing and trying to have her funds returned; and emotional distress from the pain, anguish, embarrassment, anger, depression, and anxiety.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. §§ 1693, *et. seq.* (EFTA)**
**Violation of the Electronic Fund Transfer Act and Regulation E for Failure to Comply with Error Resolution Procedures**

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

54. Defendant is a financial institution subject to the requirements of the EFTA.

55. Plaintiff's Chime Account at issue was established primarily for personal, family,

7

Case 2:25-cv-01625-PP    Filed 10/23/25    Page 7 of 9    Document 1

or household purposes. 12 CFR 1005.2(b)(1).

56. Plaintiff notified Defendant on several dates of the error in Plaintiff's Chime Account in the form of an unauthorized electronic fund transfer from the aforementioned account.

57. The aforementioned electronic fund transfer was an unauthorized electronic fund transfer as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

58. Defendant was required to initiate a good faith investigation upon notice.

59. Additionally, because the alleged error was an unauthorized EFT, Defendant bore (and bears) the affirmative burden of proof to establish that the EFT was authorized under 15 U.S.C. § 1693g(b). See also, 83 Federal Register 6364, 6382 (Feb. 12, 2018).[2]

60. Besides bearing the burden of proof for the investigation, Defendant was required to conduct a reasonable investigation and support any finding by a reasonable basis for believing the consumer's account was not in error.

61. Defendant's actions were knowing and willful and in bad faith.

62. As a direct and proximate result of the foregoing, Defendant is liable for treble damages pursuant to 15 U.S.C. § 1693f(e)(2).

63. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage as described herein.

64. As a result of each and every violation of the EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

---

[2] Absent the burden of proof, the obligation to act in good faith, and to back any determination by a reasonable basis in fact, any financial institution could simply conduct a cursory or conclusory "investigation," deny the claim, and avoid any loss to itself.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the EFTA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the EFTA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the EFTA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 23, 2025

*/s/ Yaear Weintroub*
Yaear Weintroub
WIED Bar No. 6153431
*Attorneys for Plaintiff*
*Melissa Shanel Copeland*
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing NY 11367
T: (718) 576-1863
F: (718) 247-8020
E: yweintroub@consumerattorneys.com

9